# STATE OF FLORIDA v BANKSTON

## Case No. 112106 TT A02

County Court, Palm Beach County

November 5, 1987

### APPEARANCES OF COUNSEL

**Athena Vinolus,** Assistant State Attorney, for plaintiff.

**Frederick Susaneck** for defendant.

### OPINION OF THE COURT

ROBERT S. SCHWARTZ, County Judge.

THIS CASE WAS BEFORE THE COURT, pursuant to the Defendant's motion to suppress the result of the breath test, and the Court

having heard testimony of witnesses and argument of Counsel, hereby denies the motion.

The Defendant asserts that the operation and maintenance of the intoximeter was not in substantial compliance with various regulations of HRS as mandated by F.S. 316.1932(b)(1). This Court, in the case of *State v. Hill,* 86 212606 TT A02, previously held that the standard to be applied, regarding whether there was substantial compliance, is whether the alleged violation prejudiced the Defendant by raising a legitimate question regarding the authenticity or scientific reliability of the test results. This standard is in consonance with the recent Third DCA case of *Gargone v. State,* 503 So.2d 421 (3d DCA 1987).

The Defendant asserts that the monthly testing procedure utilized on this instrument were insufficient to comply with the requirement that the intoximeter be tested for its ability to detect acetone and exclude the amount from the test result.

The only requirement to test for acetone comes from HRS Form 1514 which HRS Rule 10D-42.24(9)(b) mandates be utilized.

Section 120.52(15) of the Florida Administrative Procedure Act states, inter alia, that a "Rule" includes in its definition:

". . . any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule."

Form 1514 contains three blank spaces labeled "Acetone Results". There is no express requirement contained therein as to the amount of acetone for which the instrument is to be tested. This being the case, it is only required that the amount tested for, be an amount reasonably related to assuring the reliability of the breath test results.

At the time of the Defendant's arrest, the maintenance procedure included a test of the machine's ability to test for amounts of acetone over .02 percent, only. (Subsequently, the testing procedures have been modified to test for amounts as low as .005 percent.) Apparently the presence of acetone in a subject's breath can result in a higher breath reading in a malfunctioning instrument. The instrument has built-in safeguards to prevent this.

According to Trooper Davis, who testified for the State, the instrument has a cell which detects and measures the level of acetone. If the amount is less than .02 percent, the instrument is programed to subtract this amount from the total breath result, automatically, if the amount is greater than .02 percent, the machine shuts down and will not give a breath reading. The Trooper testified further, that because of

98

the method by which the machine detects acetone, if it accurately detects amounts greater than .02 percent, there is no way it can fail to detect acetone at lower levels and automatically exclude the amount from the breath result. Trooper Davis testified that he changed his testing procedures only to eliminate this as a Defense issue. According to the witness, the instrument has never failed to detect acetone in any test since 1985 when he began to maintain it. There was no evidence presented in contradiction of his testimony.

In view of the above, the Court finds that the testing procedures utilized by Trooper Davis reasonably assured the integrity of the instrument's acetone detection system. Therefore the Curt holds that there was no violation of HRS regulations by virtue of the maintenance procedures utilized in the Defendant's case.

The other issues presented by the Defense relate to the built-in functional design of the intoximeter. The instrument (and all other breath testing devices in Florida) are calibrated to 2100:1 even though the actual breath-alcohol to blood-alcohol ratio of individuals varies considerably. Further, the intoximeter does not print out (and is not designed to be able to print out) proof that it automatically ran the purge and blank function required by HRS rule 10D-42.24(9)(a)(5).

Trooper Davis testified that the 2100:1 ratio favors about 90% of the population who actually have a higher ratio. He stated that the other 10% would only have a slightly higher alcohol reading then their actual level.

As to the automatic purge and blank function, the uncontradicted testimony was that the machine is designed to automatically shut down if this function did not operate in a given case.

All breath-testing devices must be approved and certified by HRS. The intoximeter, with its built-in functions, limitations, and calibrations has been so approved and certified. Therefore, no violations of HRS regulations can be said to exist merely by virtue of the instrument's normal functioning.

DONE AND ORDERED, this 5th day of November 1987 at West Palm Beach, Florida.